IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2021

## JEFFREY WAYNE HUGHES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lawrence County**
**Nos. 33792, 34049, 35711  Russell Parkes, Judge**

_____

### No. M2020-00531-CCA-R3-PC

_____

The Petitioner, Jeffrey Wayne Hughes, entered open guilty pleas to one count of theft of $250,000 or more, one count of theft of $10,000 or more but less than $60,000, and six counts of money laundering, and he received an effective twenty-seven-year sentence. He filed a petition for post-conviction relief, asserting that his pleas were involuntary because the aggregation of the theft offenses violated the prohibition on ex post facto laws and asserting that he received ineffective assistance of counsel. The post-conviction court denied relief, and he appeals. We conclude that the Petitioner's pleas were not involuntary because there was no ex post facto violation and that he has not established that he received ineffective assistance of counsel. Accordingly, we affirm the denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

John M. Schweri, Columbia, Tennessee, for the appellant, Jeffrey Wayne Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Gary Howell and Christi Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Petitioner, who holds an M.B.A. and was employed as fiscal director with the Tennessee Department of Correction at the time of the offenses, served as the volunteer treasurer for both Lawrence County Fire and Rescue ("LCFR") and Crossroads Volunteer Fire Department ("Crossroads"). Between May 4, 2009, and February 9, 2016, the Petitioner stole $255,066.84 from LCFR, and between March 21, 2012, and November 17, 2015, he stole $10,800 from Crossroads by forging the required second signature on checks drawn on the organizations' accounts. *State v. Jeffrey Wayne Hughes*, No. M2017-00057-CCA-R3-CD, 2018 WL 317015, at *1 (Tenn. Crim. App. Jan. 8, 2018). The Petitioner used some of the checks to buy gift cards from Walmart, the bulk of which he subsequently sold online. *Id.* The State indicted the Petitioner in April 2016 for theft of property valued at $250,000 or more from LCFR, theft of property valued at $10,000 or more but less than $60,000 from Crossroads, and 136 counts of forgery in various amounts, which ranged from Class E to Class C felonies. In August 2016, the Petitioner was indicted for an additional 87 counts of money laundering, all Class B felonies, related to the purchases of the Walmart gift cards.

## Guilty Pleas

The Petitioner entered open guilty pleas to theft of $250,000 or more, theft of $10,000 or more but less than $60,000, and six counts of money laundering, with no agreement in place as to sentencing. At the sentencing hearing, Investigator Tommy Goetz with the District Attorney's office testified that the theft was accomplished when the Petitioner, an authorized signatory on the accounts, would forge an additional authorized signatory's signature. Some of the checks were written to cash, but most were used to purchase Walmart gift cards, the bulk of which the Petitioner sold online. The Petitioner's monthly salary from his employment with the State was $5,870, and he did not use the money for a medical or financial emergency. The Petitioner cooperated with the investigation when he was first approached, but later he declined to speak with Investigator Goetz.

Ms. Teresa Purcell, the Lawrence County budget director, testified that LCFR was an umbrella organization over thirteen Lawrence County volunteer fire departments and that LCFR received funding from Lawrence County and distributed funding to the volunteer fire departments, which were also funded through community fundraisers. LCFR was reimbursed $100,000 in insurance payments after the theft was discovered. Investigator Goetz testified that he believed Crossroads was "going to fold because of this" but that the "insurance money has saved them for the time being." Ms. Purcell

- 2 -

confirmed that Crossroads and another volunteer fire department, Crawfish Valley, were in danger of closing prior to the insurance payout. She testified regarding more rigorous audit and funding procedures that had been put into place after the discovery of the thefts. Mr. Tyler McDow, assistant director of LCFR and chief of one of the volunteer fire departments, confirmed that Crawfish Valley had so little in its bank account that LCFR had to reapportion the territory covered by each department so that Crawfish Valley would not have to shut down. He testified that there had been a decrease in volunteer fire department membership because of the new, time-consuming financial documentation requirements. LCFR's insurance premium increased as a result of the theft.

The Petitioner presented the testimony of a corrections officer with the Lawrence County Sheriff's Department, who agreed that the Petitioner was a "model inmate." The Petitioner testified that he had been continuously employed since age fifteen, including taking a job at McDonald's while out on bond. He had worked in a professional capacity with the State of Tennessee in the Comptroller's Office, the Department of Health, and the Department of Correction. The Petitioner had been married for over ten years, had four children, supported his children, and assisted with domestic duties. He testified that he was involved with his church, volunteered for an organization supporting children who had suffered abuse, and had volunteered in the community in various other capacities. He had cooperated with the investigation, had promptly surrendered when the arrest warrant was issued, and had paid restitution from his salary at McDonald's. He participated in a program aimed to help offenders accept responsibility and reform their lives, and he tried to be a positive influence in prison. He expressed remorse for his offenses and a desire to pay restitution.

The State argued as enhancement that the Petitioner had committed offenses with more than one victim and abused a position of trust, and it argued that consecutive sentencing was supported because the Petitioner was a professional criminal who knowingly devoted his life to criminal acts as a source of livelihood. The Petitioner argued that he had no criminal record at all, that his crime did not cause or threaten bodily injury, and that he cooperated with the investigation and was a model inmate. *Jeffrey Wayne Hughes*, 2018 WL 317015, at *2.

The trial court sentenced the Petitioner to eighteen years for the Class A felony theft and a concurrent four years for the Class C felony theft, and it imposed a sentence of nine years for each count of money laundering, to be served consecutively with the theft convictions but concurrently with one another, for an effective twenty-seven-year sentence. *Id.* at *3.

On appeal, the Petitioner challenged the trial court's application of mitigating factors, its denial of probation for the money laundering convictions, and its imposition

of consecutive sentences. *Id.* This court affirmed the sentences, concluding that the trial court did not err in imposing within-range sentences, did not err in denying probation, and did not err in imposing partially consecutive sentences based on the Petitioner's extensive record of criminal activity as established by the offenses charged. *Id.* at *3-9.

The Petitioner filed an application for permission to appeal, contesting the trial court's finding that he had an extensive record of criminal activity based on the offenses at issue, this court's determination that the trial court's rationale for imposing consecutive sentences was an extensive record of criminal activity rather than a finding that he was a professional criminal, and the imposition of consecutive sentences. The Tennessee Supreme Court denied review. *State v. Jeffrey Wayne Hughes*, No. M2017-00057-SC-R11-CD (Tenn. May 16, 2018) (order).

## Post-Conviction

The Petitioner filed a petition for post-conviction relief, raising several issues, including that his pleas were involuntary, that trial counsel was deficient in failing to reconcile the charges with the dates on the forged checks, that trial counsel was deficient in not interviewing the victims, that trial counsel failed to raise an Eighth Amendment violation on appeal, and that trial counsel did not discuss with him a potential ex post facto issue in the aggregation of thefts for the Class A felony theft conviction. The parties agreed at the commencement of the hearing that the judgment form for Count 6 of the money laundering charges incorrectly stated that the sentence was to be served consecutively to, rather than concurrently with, Count 5, and the post-conviction court's order reflects that this error was corrected with the agreement of all parties.

At the hearing, trial counsel testified that she had been practicing law for twenty-two years, that she was assisted by co-counsel, who had even more experience, and that she had represented clients in thousands of felony theft cases. She met with the Petitioner "certainly more than five" times. Initially, the Petitioner was charged with two counts of theft and 136 counts of forgery. The State made a plea offer of eighteen years, and the prosecutor stated that if the offer were not accepted by the deadline, the State would indict the Petitioner on more than eighty counts of money laundering. When the Petitioner declined the offer, the State followed through and indicted the Petitioner on eighty-seven money laundering charges, and the State's next plea offer was for a twenty-six-year sentence. Trial counsel reviewed an email in which she had attempted to negotiate by bringing to the State's attention similar thefts with lower sentences. The Petitioner and the State ultimately agreed that the Petitioner would enter open guilty pleas to the two thefts and six of the money laundering counts and that the State would dismiss the remaining charges. Trial counsel told the Petitioner that the minimum sentence he could receive was fifteen years and that he would not be eligible for probation. She did

not guarantee the Petitioner that he would receive a particular sentence, but she did not anticipate that his sentence would be as lengthy as it was. She noted that the trial judge was fairly new on the bench and that, while she was able to approximate the previous judge's sentences, she had not anticipated that the judge would impose such a lengthy sentence.

At the hearing, trial counsel examined the full indictments and the checks that were the basis of the indictments, and she agreed that one count of forgery listed the wrong year and that another count of forgery charged conduct occurring on October 19th rather than October 11th, when the check was dated. She testified she did not go through each count with the Petitioner but stated that she and co-counsel looked at all the images of the checks with him to try to see if any were legitimate expenses that would bring the aggregate theft below the threshold for a Class A felony. She did not discuss the variance in dates with the Petitioner. All of the forgery counts with discrepancies in the date were dismissed pursuant to the plea agreement. Trial counsel noted that if she had objected to the variance in dates, the State could have sought reindictment to correct it.

Trial counsel did not talk to representatives of the fire departments that were the victims of the thefts. Although the post-conviction petition alleged that the evidence at the sentencing hearing implied that two fire departments had closed, trial counsel testified that while there may have been an allusion to a fire department closing, it was clear from the evidence at the hearing that both were still active.

Trial counsel did not recall if she raised an issue regarding proportionality of the sentence or an Eighth Amendment violation on appeal. She noted that these types of arguments were rarely successful on appeal.

Trial counsel acknowledged that an amendment to the theft grading statute which both codified aggregation of offenses and raised the maximum punishment to a Class A rather than a Class B felony, went into effect in 2012. She likewise agreed that some of the thefts used to reach the $250,000 necessary to establish a Class A felony occurred prior to the effective date of the amendment. Trial counsel did not discuss the amendment to the statute or any potential ex post facto issues with the Petitioner. She disagreed that the amendment was relevant or that conduct prior to 2012 could not be used in the aggregate amount.

Trial counsel testified that she believed that the Petitioner did not get justice and that what happened to him was "immoral." She stated she would be "glad to say I was ineffective." When asked how she was ineffective, she said, "I was ineffective in not realizing that he could get a sentence that showed no moral character on the part of the people that prosecuted him and sentenced him." However, she disagreed that the

Petitioner's plea was rendered involuntary because she did not discuss the potential ex post facto issue. Trial counsel also stated she was ineffective because she did not research the judge to predict the Petitioner's sentence and because "this is wrong. It's just immoral."

The Petitioner testified that his mother hired trial counsel and that they met five to six times before trial. The Petitioner only saw co-counsel at one meeting and one hearing. The State's lowest plea offer was for an eighteen-year sentence. The Petitioner said he turned down the plea offer on counsel's advice. He entered the open guilty plea on the advice of his trial counsel, who told him that she did not believe twenty-six years was a fair plea offer. In discussing the plea offer, "we were looking around the 15-year number…. Never did we ever think or dream that it would be the number that was given." The Petitioner stated that trial counsel should have investigated the judge's prior sentencing decisions. He acknowledged he was aware of his sentencing exposure when he entered the pleas.

The Petitioner testified that trial counsel did not review the actual indictments with the Petitioner, but instead went over spreadsheets listing the amounts taken and the payee on the check. The Petitioner confirmed that some of dates on the indictments did not match the dates on the checks, and he stated he would not have entered guilty pleas knowing that the dates were incorrect.

The Petitioner testified that the two fire departments mentioned at the sentencing hearing did not shut down. Furthermore, he stated that if trial counsel had investigated, the proof would have shown that the branches did not almost shut down because of his actions. He asserted that trial counsel did not investigate whether any fire stations closed due to his theft.

The Petitioner noted that he had no criminal record at all and that he was the sole provider for four dependent children. He acknowledged he had acted unjustly but stated that he was incarcerated with men who had committed violent crimes but had received a lesser sentence than he did. He noted that he could not pay restitution while in prison and that the State bore the cost of his imprisonment.

The Petitioner reviewed the indictments and stated that Counts 3-19 of the forgery charges were based on thefts prior to the effective date of the 2012 amendment to the theft statute. He stated that the total amount of these checks was close to $25,000, and that in the absence of this amount, the aggregate theft would have been a Class B felony. Trial counsel never discussed the fact that the application of the statutory amendment could violate the prohibition on ex post facto laws. Asked if he would have entered a guilty plea had he known about the issue with respect to the theft statute, the Petitioner

answered, "No. I mean I certainly would've tried to get her to, I think, argue that fact … before we would ever [have] got there."

The post-conviction court denied relief. Regarding the issues raised on appeal, the post-conviction court found that trial counsel met with the Petitioner, reviewed discovery, and adequately investigated the facts. The court noted that the transcript reflected that trial counsel had challenged the State's witnesses at sentencing regarding any threatened closure of the fire departments. The post-conviction court also found that any deficiency in the investigation was not prejudicial. The court found that trial counsel researched the sentences imposed in cases similar to the Petitioner's when conducting plea negotiations and that the Petitioner had not shown deficiency or prejudice from counsel's failing to raise an Eighth Amendment claim. The post-conviction court found that counsel was not deficient in failing to discuss any ex post facto issue with the Petitioner, and it denied post-conviction relief. The Petitioner appeals.

## ANALYSIS

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witnesses, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.* A claim that a plea was not knowing and voluntary is likewise a mixed question of fact and law. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010).

## I. Voluntary Plea

The Petitioner asserts that his pleas were not knowing or voluntary because he was not aware that a portion of the aggregated amount of the theft was committed prior to the amendment to the theft grading statute and not aware that the Class A felony theft conviction would constitute an ex post facto application of sentencing. The State responds that the pleas were knowing and voluntary.

- 7 -

A guilty plea which is not entered knowingly or voluntarily amounts to a denial of due process. *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). Such a claim may properly be addressed through post-conviction proceedings. *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000). The standard for determining the voluntariness of a plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jaco v. State*, 120 S.W.3d 828, 831 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A plea is not voluntary if it results from "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats....'" *Blankenship v. State*, 858 S.W.2d 897, 904 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)). "'Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'" *Id.* at 903 (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). This court considers the totality of the circumstances, including evidence at post-conviction, to determine whether a guilty plea was entered voluntarily, knowingly, and intelligently. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). In particular, the court may consider:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. A waiver of a constitutional right "'not only must be voluntary'" but must also consist of "'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *State v. Crowe*, 168 S.W.3d 731, 748 (Tenn. 2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The Petitioner argues that his pleas were not knowing or voluntary because he was unaware that his Class A felony conviction violated the constitutional prohibition against ex post facto laws.

To constitute a violation of the prohibition against ex post facto laws, "'a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, ... by altering the definition of criminal conduct or increasing the punishment for the crime . . . .'" *State v. Pruitt*, 510 S.W.3d 398, 416-17 (Tenn. 2016) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal quotations omitted)). As related to sentencing, a law violates the Ex Post Facto Clause if it "'inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Id.* at 411 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)).

The 2012 amendment to Tennessee Code Annotated section 39-14-105 both codified the law regarding aggregation and increased the maximum punishment for theft from a Class B felony to a Class A felony. The Petitioner's claim is premised on the argument that the State could not aggregate his thefts into a single Class A felony theft based on conduct that occurred in part prior to the 2012 amendment. The State's ability to aggregate the thefts requires us to determine: (1) whether aggregation in general was proper under the statute when the aggregation included thefts prior to the codification of aggregation by statute; and (2) whether the Petitioner was disadvantaged by an increased punishment when he was convicted of Class A felony theft and the aggregated amount included thefts from prior to the statute's enactment.

Trial counsel testified that some of the thefts making up the cumulative $250,000 occurred before the amendment of the statute. The Petitioner's testimony at the hearing was that Counts 3-19 of the forgery charges were based on thefts which occurred prior to the effective date of the 2012 amendment to the theft statute, and the total amount of these thefts was almost $25,000, whereas the total amount of the theft against LCFR $255,066.84. The Petitioner argues that excluding these thefts would bring the total value of the theft down below the $250,000 required to establish a Class A felony.

Like valuation, aggregation is not an element of theft. *State v. Jones*, 589 S.W.3d 747, 761 (Tenn. 2019). Instead, aggregation is related to punishment and must be determined only after the jury has concluded that the elements of the offense of theft have been established. *Id.* When an aggregated theft is charged, the jury must first determine whether any theft occurred and then determine if more than one of the charged thefts arose from a common scheme, purpose, intent, or enterprise under statute. *Id.* If the jury makes a finding that aggregation is proper, it must then determine the value of the thefts which meet the aggregation criteria. *Id.*

Prior to July 1, 2012, the aggregation of theft was not statutorily codified. *See* T.C.A. § 39-14-105 (2010). However, while the 2012 amendment to Tennessee Code Annotated § 39-14-105(b) codified aggregation, common law already provided for aggregation prior to the passage of the amendment. *See State v. Byrd*, 968 S.W.2d 290, 291 (Tenn. 1998), *abrogation recognized by Jones*, 589 S.W.3d at 758-59. Under *Byrd*, theft could be aggregated under certain circumstances, including if the property was taken (1) from the same owner(s), (2) from the same location, and (3) "pursuant to a continuing criminal impulse or a single sustained larcenous scheme." *Id.* at 291. The amendment to the theft grading statute enacted in 2012 provided for aggregation under the following circumstances:

(1) In a prosecution for theft of property, ... the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise.
(2) The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value under this section.

T.C.A. § 39-14-105(b) (2012). In *Jones*, the Tennessee Supreme Court determined that the limitations in *Byrd* had been abrogated by statute and that, under statute, the State had only to prove a "common scheme, purpose, intent or enterprise." *Jones*, 589 S.W.3d at 758-59.

The Petitioner's thefts against LCFR were committed pursuant to a single, common larcenous scheme and the takings involved the same owner and location. Therefore, in the Petitioner's case, the aggregation was proper either under the *Byrd* standard or under the statutory codification of aggregation. *See Jones*, 589 S.W.3d at 763 (holding that a defendant's thefts of numerous fitness trackers from several Target locations over a period of several days arose from a common scheme, purpose, intent, or enterprise); *State v. Black*, 75 S.W.3d 422, 426 (Tenn. Crim. App. 2001) (aggregating offenses under common law when the defendant embezzled money from her employer over a period of three years by altering over 150 checks). "[I]n determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." *Pruitt*, 510 S.W.3d at 414 (quoting *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993)). Because the codification of aggregation did not, in the Petitioner's case, change the punishment to his disadvantage or inflict greater punishment, the State's use of aggregation did not violate the prohibition against ex post facto laws.

The State also charged the aggregated theft as a Class A felony. The theft grading statute prescribes punishment for the offense of theft by increasing the Class based on the value of the property. Prior to 2012, the maximum punishment for theft was as a Class B felony, "if the value of the property or services obtained is sixty thousand dollars ($60,000) or more." T.C.A. § 39-14-105(5) (2010). In an amendment taking effect July 1, 2012, the Legislature, in addition to other changes, added another subsection to the theft gradation statute, providing that theft of property or services is: "(6) A Class A felony if the value of the property or services obtained is two hundred fifty thousand dollars ($250,000) or more." T.C.A. § 39-14-105(a)(6) (2012). The Petitioner contends that the application of this provision to his offenses aggregated prior

to the effective date of the legislation is an ex post facto law and that his pleas were not voluntary because his attorney never informed him of the issue.

Tennessee courts have "made a distinction between multiple discrete acts that individually constitute separate substantive offenses and those offenses that punish a single, continuing course of conduct." *State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). "Continuing offenses generally stem from a single motivation or scheme, although such offenses can be committed by multiple discrete acts occurring over a period of time." *Id.* A crime is only considered a continuing offense if "'the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one.'" *Id.* at 295 (quoting *State v. Legg*, 9 S.W.3d 111, 116 (Tenn.1999)).

Whether an offense is a continuing offense bears on whether or not there is a violation of the prohibition against ex post facto laws. In general, a continuing offense which "straddles" the enactment of a statute "will not run afoul of the Ex Post Facto Clause unless it was possible for a jury to convict based exclusively on the preenactment conduct" because the offense is not completed until the last act is performed. 16B Am. Jur. 2d Constitutional Law § 693 (footnote omitted). Federal courts have held that "where the conduct is a 'continuing offense' spanning a period before and after a Guidelines Manual revision, the later Guidelines Manual applies without violating the ex post facto clause." *United States v. Wijegoonaratna*, 922 F.3d 983, 992-93 (9th Cir. 2019). The rationale is that the prohibition against ex post facto laws is concerned with notice to the accused and a prohibition on increasing punishment beyond that prescribed when the crime was consummated, but a continuing offense which "straddles" the enactment of a new law is not consummated until after the law's effective date. *United States v. Josephberg*, 562 F.3d 478, 502 (2d Cir. 2009). "A crime is consummated when it is completed, and as to a continuing offense that was begun prior to the effective date of a Guidelines amendment and completed after that date, application of the amendment does not violate the *Ex Post Facto* Clause." *Id.* (concluding there was not ex post facto violation for sentencing numerous acts of tax evasion under the new guidelines); *see United States v. McCall*, 915 F.2d 811, 816 (2d Cir. 1990) (concluding that "the offense of violent crimes in aid of racketeering activity" "was both a continuing offense and a straddle crime" and that there was no ex post facto violation). Accordingly, there is no violation where the law "gives notice to the defendant that his or her offenses may be grouped for sentencing purposes and that the later-enacted [law] will apply." *United States v. Siddons*, 660 F.3d 699, 706 (3d Cir. 2011).

We note that "the ex post facto clause of the Tennessee Constitution has the same definition and scope as the federal clause." *Pruitt*, 510 S.W.3d at 416. In keeping with

the federal decisions cited above, this court has determined that there was no ex post facto violation when a defendant convicted of the continuing offense of conspiracy to distribute marijuana was sentenced to a Class A felony rather than a Class B felony under a statute amended during the continuing conspiracy. *Agee v. State*, 111 S.W.3d 571, 577 (Tenn. Crim. App. 2003); *see United States v. Frazier*, 936 F.2d 262, 267 (6th Cir. 1991) (enhanced sentence of life in prison for conspiracy to transport over five kilograms of cocaine was not an ex post facto law when only a portion of the five kilograms was "involved" after the effective date of the amendment).

A court must examine the statutory elements of an offense to determine "whether the elements of the crime themselves contemplate punishment of a continuing course of conduct." *Adams*, 24 S.W.3d at 294 (concluding, in analyzing an election requirement, that aggravated child abuse through neglect was a continuing offense based in part on the statutory language of refusing to provide necessary care). The statutory language of Tennessee Code Annotated section 39-14-105, related to aggregation, permits the State to charge as a single count "multiple criminal acts committed against one (1) or more victims … if the criminal acts arise from a common scheme, purpose, intent or enterprise." T.C.A. § 39-14-105(b)(1). Moreover, when multiple acts are charged as a single count under statute, "the monetary value of property from multiple criminal acts … shall be aggregated." T.C.A. § 39-14-105(b)(2). We conclude that aggregated theft, by the statutory terms, contemplates charging as a single offense multiple criminal acts which may occur over a period of time and that aggregated theft is a continuing offense.

Moreover, prior caselaw has also concluded that aggregated theft is a continuing offense. In *State v. Arthur Graham and Michelle Graham* ("*Graham*"), the defendants were indicted for various theft offenses which were aggregated into one felony. No. W2015-02410-CCA-R3-CD, 2017 WL 2800208, at *5 (Tenn. Crim. App. June 28, 2017). Included in the aggregated amount were thefts for which the statute of limitations had expired. *Id.* at *1. This court held that because the theft was aggregated, "there was not a separate statute of limitations as to each act, but, rather, the statute as to all offenses ran from the last act in the series." *Id.* at *5. *Graham* cited *State v. Robert Dewayne Criswell*, in which this court noted that "'[o]ffenses which are continuous in nature can be prosecuted if even part of the offense occurred within the limitations period, notwithstanding the fact that part of the offense also occurred outside the period.'" No. 01C01-9804-CR-00163, 1999 WL 228795, at *2 (Tenn. Crim. App. Apr. 21, 1999) (quoting David Raybin, *Tennessee Criminal Practice and Procedure* § 16.83 (1984)). In *State v. Epps*, this court vacated a defendant's conviction for attempted theft when the attempted theft was from the same victim and location as a completed theft. 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998). In determining whether the acts of the defendant constitute several thefts or one single crime, the court observed that "[i]f each taking is the result of a separate intent, each is a separate crime; however, where the takings are all

pursuant to a single intent, there is but a single larceny." *Id.* at 746; *see State v. Pierce*, 23 S.W.3d 289, 296 n.8 (Tenn. 2000) (concluding that the homicide was merely collateral to and separate from the theft for the purposes of felony murder, but noting that the holding did "not narrow the definition of theft for purposes of prosecution of that offense nor does it change the analysis courts should apply when determining whether theft is a continuing offense for purposes of jurisdiction").

We conclude that aggregated theft, when charged as a single offense, is a continuing offense. *See Wijegoonaratna*, 922 F.3d at 992-93 (concluding that, because health care fraud could be charged as multiple discrete offenses or a continuing offense and because the government chose to charge multiple offenses rather than a continuing offense, the application of the enacted sentencing change would be an ex post facto violation). The Petitioner's continuing offense straddled the amendment of the theft grading statute. The plain terms of the statute permitted the State to aggregate offenses meeting certain criteria and to impose an increased punishment on those whose offenses continued past the effective date of the amendment. The Petitioner continued to commit acts of thievery even after the amendment, and we conclude there was no ex post facto violation in his conviction for a Class A felony. *See State v. Casper*, 297 S.W.3d 676, 690 (Tenn. 2009) (noting "the 'venerable' and 'deeply rooted' common-law principle that ignorance … of law is no defense to criminal prosecution"). Accordingly, the conviction did not violate the prohibition on ex post facto laws, and the Petitioner's pleas were not unknowing and involuntary.

## II. Ineffective Assistance of Counsel

The Petitioner also raises claims of ineffective assistance of counsel. Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Deficiency requires showing that counsel's errors were so serious "'that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 687). To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). "'[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). In evaluating counsel's performance, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91). The reviewing court must begin with the presumption "that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the deficiency deprived him of a fair trial and called the reliability of the outcome of the proceeding into question. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

The *Strickland* standard for determining whether a petitioner received the ineffective assistance of counsel applies in plea negotiations as well as during trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012). In order to show prejudice in the context of a guilty plea, the petitioner must demonstrate "'a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff*, 297 S.W.3d at 217 (quoting *Hill*, 474 U.S. at 59). The inquiry should focus on whether any alleged deficiency affected the outcome of the plea process. *Grindstaff*, 297 S.W.3d at 217.

### A. Failure to Investigate

The Petitioner alleges that trial counsel was deficient in failing to interview the victims and in failing to discover the discrepancies on some of the dates in the indictments. We conclude that the Petitioner has not established that counsel's investigation amounted to ineffective assistance of counsel.

- 14 -

Regarding the failure to investigate the victims, the Petitioner's claim centers around the allegation that the sentencing hearing gave the trial court the impression that two of the volunteer fire departments had shut down. However, the post-conviction court found, and the transcript of the sentencing hearing reflects, that the testimony at sentencing merely established that two of the departments would have been in danger of closing had they not received the insurance proceeds. The Petitioner has not made any specific allegations regarding what, other than the fact that the departments did not actually close, trial counsel would have found regarding the fire departments had she interviewed them, and we conclude he has not established any prejudice.

The Petitioner also asserts that trial counsel performed deficiently in failing to discover that two of the fraudulent checks were written on dates that did not match the dates alleged in the indictment. Trial counsel acknowledged she had not noticed the discrepancy, but she noted that the State could have reindicted the charges if she had objected and that those charges were dismissed pursuant to the plea agreement.

We conclude that the Petitioner has not shown a reasonable probability that the outcome would have been different had trial counsel either interviewed the victims or noticed the discrepancy in dates and objected to the two counts out of the over two hundred counts charged. Accordingly, he is not entitled to relief.

## B. Failure to Raise Eighth Amendment Issue on Appeal

The Petitioner next asserts that trial counsel was deficient in failing to raise on appeal a claim that his twenty-seven-year sentence violated the Eighth Amendment's prohibition against cruel or unusual punishment. The Petitioner provides a review of various states's sentencing laws which prescribe lower punishments for theft. The State contends that the sentences were reasonable. We conclude that trial counsel's decision not to raise the issue on appeal does not amount to deficiency.

"Appellate counsel are not constitutionally required to raise every conceivable issue on appeal," and the choice of which issues to raise rests within appellate counsel's discretion. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). A reviewing court gives "considerable deference" to counsel's judgment regarding which issues to raise on appeal, so long as the choices are within the "range of competence required of attorneys in criminal cases." *Carpenter*, 126 S.W.3d at 887. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome,'"

although the Tennessee Supreme Court has declined to hold that this is the "*only* way to show" deficiency. *Id.* at 888 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). When a claim of ineffective assistance of counsel is premised on the failure to preserve an issue on appeal, the reviewing court should determine the merits of the issue. *Id.* "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* The strength of the omitted issue also has bearing on whether failure to raise the issue resulted in prejudice. *Id.* The reviewing court may consider the following factors in determining whether omitting an issue on appeal was deficient:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?
6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7) What was appellate counsel's level of experience and expertise?
8) Did the petitioner and appellate counsel meet and go over possible issues?
9) Is there evidence that counsel reviewed all the facts?
10) Were the omitted issues dealt with in other assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 888 (noting that the final factor reaches the ultimate issue of deficiency and "therefore is not helpful in deciding whether appellate counsel's performance was deficient").

Trial counsel, who was an experienced criminal defense attorney, testified that she did not to raise an Eighth Amendment claim on appeal because these arguments were rarely successful on appeal. Trial counsel challenged on appeal the trial court's application of mitigating factors, its denial of probation for the money laundering convictions, and its imposition of consecutive sentences based on the Petitioner's status as a professional criminal. This court did not affirm the consecutive sentences based on the Petitioner's status as a professional criminal but instead interpreted the trial court's ruling as a finding of extensive criminal activity. *Jeffrey Wayne Hughes*, 2018 WL 317015, at *9.

"'The protection against cruel and unusual punishments afforded by the Eighth Amendment [to the United States Constitution] has defied precise delineation.'" *State v.*

*Smith*, 48 S.W.3d 159, 170 (Tenn. Crim. App. 2000) (quoting Joseph G. Cook, *Constitutional Rights of the Accused* § 26:1, at 26-5 (3d ed.1996)). A proportionality challenge should begin by comparing the sentence with the crime. *State v. Harris*, 844 S.W.2d 601, 603 (Tenn. 1992). If there is an inference of gross disproportionality, the court may then compare sentences imposed on other criminals in the same jurisdiction and for the same crime in other jurisdictions. *Id.* In evaluating gross disproportionality under the threshold inquiry, courts evaluate:

> (1) the nature of the crime, including whether society views the crime as serious or relatively minor and whether the crime is violent or non-violent; (2) the circumstances of the crime, including the culpability of the offender, as reflected by his intent and motive, and the magnitude of the crime; and (3) the existence and nature of any prior felonies if used to enhance the defendant's penalty.

*Smith*, 48 S.W.3d at 171.

Here, the Petitioner committed a nonviolent theft in which he stole a large amount of money over a period of almost seven years from volunteer organizations dedicated to providing essential services to the community. As trial counsel noted at the post-conviction hearing, ""[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Harris*, 844 S.W.2d at 602 (quoting *Solem v. Helm*, 463 U.S. 277, 289-90 (1983)). This court has previously upheld lengthy sentences for nonviolent crimes against an Eighth Amendment challenge. *See State v. Jawara Jones*, No. M2017-01666-CCA-R3-CD, 2020 WL 2079270, at *10-11 (Tenn. Crim. App. Apr. 30, 2020) (a fifteen-year sentence for tampering with evidence was not disproportionate when the defendant ate marijuana), *no perm. app. filed*; *Robert Gentry Galbreath v. State*, No. M2003-02807-CCA-R3-PC, 2005 WL 119534, at *23-24 (Tenn. Crim. App. Jan. 19, 2005) (a thirty-six year sentence imposed for fraudulently obtaining prescription drugs on twelve occasions was not cruel and unusual); *Smith*, 48 S.W.3d at 172 (upholding a sixty-year sentence for sale of 1.4 grams of cocaine in a school zone). Moreover, while the Petitioner cites to the laws of some states mandating lower punishment for theft, other states provide for sentences similar to the Petitioner's. *See, e.g.*, Fla. Stat. Ann. §§ 812.014 (2)(a) (providing that theft of $100,000 or more is punishable as a first degree felony); 775.082(3)(b) (providing for punishment of up to thirty years for a first degree felony); Ga. Code Ann. § 16-8-12(a)(1)(A) (authorizing a sentence of up to twenty years for theft in excess of $24,999.99).

We cannot conclude that the Eighth Amendment issue was clearly stronger than those presented on appeal, that trial counsel's justification for omitting the issue was

unreasonable, or that the decision to omit the issue was an unreasonable one which only an incompetent attorney would adopt. Accordingly, we conclude that counsel was not deficient.

### C. Failure to Advise on Ex Post Facto Issue

The Petitioner also contends that trial counsel's failure to discuss with him the fact that the theft grading statute was amended in 2012, potentially subjecting him to ex post facto punishment, amounted to ineffective assistance of counsel. The State responds that trial counsel was not deficient and that the Petitioner has not shown prejudice.

We have determined above that the Petitioner's sentence did not violate the prohibition against ex post facto laws. Accordingly, we conclude trial counsel was not deficient in not discussing the issue with the Petitioner, and the Petitioner is not entitled to relief.

### CONCLUSION

Based on the foregoing reasoning, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE