**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SRI WIJEGOONARATNA, AKA Dr. J,<br>*Defendant-Appellant.* | No. 17-50255<br><br>D.C. No.<br>2:14-cr-00512-<br>SJO-VAP-3<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 5, 2019
Pasadena, California

Filed April 26, 2019

Before: Ronald M. Gould, Jacqueline H. Nguyen,
and John B. Owens, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Criminal Law

The panel affirmed a conviction for seven counts of health care fraud, affirmed in part and vacated in part the sentence, and remanded, in a case in which the defendant, a physician, and others affiliated with California Hospice Care fraudulently billed Medicare and Medi-Cal for hospice care given to patients who had been falsely certified as terminally ill.

Affirming the conviction, the panel held that the district court did not err in overruling the defendant's objection to the prosecutor's statement during closing argument that office staff who completed a patient intake form copied the defendant's assessment.

The panel rejected the defendant's contention that the district court, at sentencing, did not make Fed. R. Crim. P. 32's required factual findings on a disputed loss calculation.

The panel held that sufficient evidence supports the district court's finding that the defendant intended the loss amounts underlying his sentencing enhancements.

The panel held that the district court did not plainly err in applying an enhancement pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 3C1.3 for committing a crime while on supervised release, where the defendant – whose counts of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conviction concerned conduct before he went on pretrial release – continued the same course of conduct after his pretrial release began.

Reviewing de novo, the panel held that because the government charged the defendant with multiple counts rather than a single continuing offense, the district court violated the ex post facto clause by sentencing him under the 2016 Sentencing Guidelines Manual on the six counts arising from conduct that occurred before the Guidelines Manual revision.

## COUNSEL

Alyssa D. Bell (argued), Anya J. Goldstein, and Reuven L. Cohen, Cohen Williams LLP, Los Angeles, California, for Defendant-Appellant.

Steven M. Arkow (argued), Assistant United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; Nicola T. Hanna, United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

GOULD, Circuit Judge:

Defendant Sri Wijegoonaratna appeals his jury conviction and sentence for seven counts of health care fraud in violation of 18 U.S.C. § 1347. We affirm Wijegoonaratna's conviction, and we affirm in part and vacate and remand in part his sentence.

**I**

**A**

Hospice care is designed for patients with terminal illnesses who choose to forgo active treatment of their terminal condition and instead receive palliative care, including pain relief and family bereavement services. Hospice care may be provided in the patient's home or in a facility such as a nursing home.

For eligible Medicare beneficiaries, Medicare pays around $200–250 per day for hospice care. To be eligible, a patient must be certified as terminally ill by two licensed physicians. "Terminally ill" means that the patient's prognosis is less than six months if the disease runs its normal course. The two licensed physicians are typically the hospice medical director or staff physician and the patient's attending physician. Patients are initially certified for ninety days of service. If a patient requires hospice care beyond those ninety days, the patient can be recertified for an additional period. Recertification requires just one physician.

About 85% of hospice patients die in hospice care (the remaining 15% end hospice care alive). Patients receive hospice care for an average of sixty-six days, but about half receive hospice care for fewer than twenty days before dying.

Priscilla Villabroza acquired California Hospice Care ("CHC") in 2008. Sharon Patrow, her daughter, handled business operations; Erwin Castillo, a registered nurse, handled medical matters. Dr. Violeta Atiga worked as the medical director.

Patient admission at CHC required three documents: (1) a nursing assessment, completed by a nurse during a visit; (2) a history and physical, completed by a physician during a visit; and (3) a patient intake form, completed by CHC office staff.  At trial, the parties disputed the order in which these documents were completed. Once a patient's file was complete, the patient's attending physician and Dr. Atiga would certify that the patient was terminally ill.

According to trial testimony, CHC's practice was to fraudulently bill Medicare and Medi-Cal for hospice care given to patients who had been falsely certified as terminally ill. CHC illegally paid recruiters to refer patients to CHC. CHC also falsified records and even paid some patients to be on hospice.  Although CHC certified its patients as terminally ill, the majority of CHC patients did not die within six months of admission.

Wijegoonaratna filled several roles at CHC from November 2009 to May 2013.  For most CHC patients, Wijegoonaratna was the attending physician—the physician who completed the "history and physical," certified the patient as hospice-eligible (along with Dr. Atiga), and remained responsible for the patient's care.  Wijegoonaratna also recruited around half of CHC's patients, participated in team meetings, and served as its associate medical director. He continued in these roles even after he was indicted and placed on pretrial release in a different criminal case.  All told, CHC paid Wijegoonaratna over $325,000 while he worked with CHC, not including any cash payments he received, e.g., for illegal kickbacks.

**B**

After investigators discovered CHC's fraud, Wijegoonaratna was charged with nine counts of healthcare

fraud in violation of 18 U.S.C. § 1347.  He was charged along with Villabroza, Patrow, a nurse, a patient recruiter, and another doctor (Boyao Huang).  Castillo was charged separately.

**1**

Wijegoonaratna and Huang went to trial. Wijegoonaratna was tried on seven counts, each one representing a patient Wijegoonaratna had fraudulently certified as terminally ill and for whose care CHC had billed Medicare or Medi-Cal.

The government presented the testimony of family members, doctors, a hospice expert, and the patients to show that none of the seven patients was in fact terminally ill.

The defense argued that Wijegoonaratna's diagnoses merely confirmed earlier assessments made by the nurses. The defense attempted to show that Wijegoonaratna's diagnoses were legitimate—that is, that the patients were actually eligible for hospice care—because another medical professional made the same diagnoses.  At a minimum, the defense hoped that the jury would conclude that Wijegoonaratna was lazy, but not criminal: that he did not perform his own review, and instead negligently, but without intent to defraud, copied the nurse's earlier assessment.

To support that theory, during closing argument the defense highlighted one piece of evidence: an intake form in a patient's file that listed a terminal illness. Defense counsel referred to the document as the patient's nursing assessment (which was to be completed by a nurse during a visit), but the document that defense counsel described was in fact the intake form (completed by CHC office staff).  By contrast, the nursing assessment contained a non-terminal diagnosis;

it was the intake form that contained the terminal illness. Wijegoonaratna's history and physical contained the same diagnosis as the intake form.

Ignoring the differences between the two documents and who was to prepare them, defense counsel argued that Wijegoonaratna had merely copied the intake form diagnosis into his history and physical.

In its rebuttal, the government emphasized Wijegoonaratna's independent duty to assess patients medically and his deep involvement in CHC. The government also addressed the specific document highlighted by the defense. First, the government pointed out that the nursing assessment in the patient's file contained a non-terminal diagnosis. Second, the government suggested that the office staff who filled out the intake form had copied Wijegoonaratna's diagnosis, and not the other way around.

At that point, defense counsel objected that there was "no such evidence" that the office staff copied Wijegoonaratna's diagnosis. The court overruled the objection. The government continued its rebuttal, emphasizing that "the intake form is not the nurse's assessment." At the end of closing arguments, Wijegoonaratna moved for a mistrial based on those statements, but the court denied the motion.

The jury convicted Wijegoonaratna on all seven counts.

## 2

The presentence report calculated two guideline ranges: one for the six counts (counts 1, 2, 3, 4, 7, and 8) committed while the 2010 Sentencing Commission Guidelines Manual was in effect, and one for the remaining count (count 9),

which was committed after the 2010 Guidelines Manual was revised to Wijegoonaratna's detriment.[1]    Under the 2010 Guidelines Manual, Wijegoonaratna's offense level was 29 and the guideline range was 87−108 months.  In 2011, the Sentencing Commission added a two-level specific offense characteristic for a loss greater than $1 million to a government healthcare program.   U.S.S.G. § 2B1.1(b)(7) (2016).  Because of those additional two levels, for count 9, Wijegoonaratna's offense level was 31 and the guideline range was 108−135 months.

Under both versions of the Guidelines Manual, an 18-level loss enhancement applied.   *See*   U.S.S.G. § 2B1.1(b)(1)(J)   &   cmt.   3(A)   (2010);   U.S.S.G. § 2B1.1(b)(1)(J)   &   cmt.   3(F)(viii)   (2016).    The loss enhancement was based on the amount CHC billed (and Medicare paid) for Wijegoonaratna's patients, excluding those patients who died while receiving CHC hospice care.

CHC billed $4,014,989, and Medicare paid $3,384,202, for Wijegoonaratna's patients who were alive when they were discharged from hospice care.  Under both versions of the Guidelines Manual, Wijegoonaratna was also subject to a three-level increase for committing an offense while on pretrial release.  U.S.S.G. § 3C1.3 (2010); U.S.S.G. § 3C1.3 (2016). In his sentencing memorandum, Wijegoonaratna challenged   the   loss   amount   calculation   as   lacking

---

[1] The presentence report applied the 2016 Manual to count 9 to comply with the Sentencing Commission's instruction that courts "shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so "would violate the ex post facto clause." U.S.S.G. § 1B1.11. The parties agree that there is no such issue with applying the 2016 manual to count 9 and, thus, that it was correct for the district court to do so.

evidentiary and legal support.  He also argued that his age and deteriorating health justified a downward variance.

At the sentencing hearing, Wijegoonaratna did not raise any new objections.  Addressing Wijegoonaratna's request for a shorter sentence based on his health condition, the court noted that Wijegoonaratna "made the decision for 130 persons that their underlying health conditions should not be treated, that they should go into hospice and waive and give up their right to treatment."

The district court overruled Wijegoonaratna's objection to the loss amount calculation.  The court then stated that Wijegoonaratna's total offense level is 31 and guideline range is 108–135 months.  The court then imposed a 108-month prison sentence: 78 months on the first six counts and 30 months on the remaining count, to be served concurrently, with an additional 30 months based on the sentencing enhancement, to be served consecutively.

## II

### A

Wijegoonaratna challenges his conviction on the ground that the prosecutor committed misconduct when he represented that the nurses completing the intake form copied Wijegoonaratna's assessment.

We usually review for abuse of discretion a district court's overruling of an objection to prosecutorial misconduct.  *See, e.g.*, *United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011); *United States v. Tam*, 240 F.3d 797, 802 (9th Cir. 2001).  However, Wijegoonaratna points out that in *United States v. Perlaza* we stated that we "review

whether closing argument constitutes misconduct *de novo.*" 439 F.3d 1149, 1169 n.22 (9th Cir. 2006).

*Perlaza* appears to have mistaken the standard of review. *Perlaza* cites *United States v. Santiago*, where we reviewed "the court's overruling of the objection" to the prosecutor's comments at trial "for abuse of discretion." 46 F.3d 885, 892 (9th Cir. 1995). But to the extent that *Perlaza* created an intracircuit conflict, here "[w]e are not prompted to call for our court to revisit the broader issue en banc" because "in the end" applying either standard of review "would not alter [the] outcome." *United States v. Torres*, 869 F.3d 1089, 1107 (9th Cir. 2017) (Clifton, J., concurring). Because we reach the same results under review for abuse of discretion and de novo review, we need not and decline to weigh in on the intracircuit conflict that appellant asserts exists.

In reviewing alleged prosecutorial misconduct, we "focus[] on its asserted impropriety and substantial prejudicial effect." *United States v. Weatherspoon*, 410 F.3d 1142, 1145 (9th Cir. 2005). "We must . . . determine at the outset whether the prosecutor made improper statements. . . ." *Id.* "During closing argument, a prosecutor may do no more than comment on facts in evidence and make reasonable inferences based on the evidence." *United States v. Hermanek*, 289 F.3d 1076, 1101 (9th Cir. 2002).

Here, we conclude that the prosecutor's statement—that the office staff completing the intake form copied Wijegoonaratna's history and physical—was not improper. Although no witness directly testified to that fact, the proposition is reasonably inferred from the evidence. Trial testimony established that at CHC the intake forms were not sent to the doctors performing the history and physical; thus, it is a reasonable inference that the staff copied Wijegoonaratna's diagnosis, rather than the other way

around. Also, the nursing assessment in the patient's file contained a different, non-terminal diagnosis, so Wijegoonaratna could not have copied his terminal diagnosis from that document.

Wijegoonaratna also contends that even if the prosecutor's statement was a fair inference as to one patient, it was inappropriate as a more sweeping statement of CHC's usual practice. Read in context, however, the prosecutor's statement referred only to the specific documents that the defense had highlighted in its closing. The district court did not err in overruling Wijegoonaratna's objection to the prosecutor's statement.

## B

Wijegoonaratna challenges his sentence on several grounds. First, he argues that the district court did not make Federal Rule of Criminal Procedure 32's required factual findings on the disputed loss calculation.

Generally, we review de novo the sentencing court's compliance with Rule 32. *United States v. Burkholder*, 590 F.3d 1071, 1076 (9th Cir. 2010). But where a defendant does not object at sentencing to a district court's compliance with the Rule, we review for plain error.[2] *United States v. Kaplan*, 839 F.3d 795, 803 (9th Cir. 2016). Wijegoonaratna argues that we should review de novo under the "pure questions of law" exception to plain error review, but that exception does not apply to review of mixed questions of

---

[2] Contrary to the government's contention, where a defendant fails to object, the issue is forfeited, not waived. *United States v. Depue*, 912 F.3d 1227, 1232–34 (9th Cir. 2019) (en banc).

law and fact such as this one.  *See United States v. Yijun Zhou*, 838 F.3d 1007, 1012 (9th Cir. 2016).

At sentencing, a district court must, "for any disputed portion of the presentence report or other controverted matter" either "rule on the dispute or determine that a ruling is unnecessary."  Fed. R. Crim. P. 32(i)(3)(B).  The district court's findings under Rule 32 must be express and explicit. *See United States v. Doe*, 705 F.3d 1134, 1153 (9th Cir. 2013).  "Rule 32 findings 'need not be detailed and lengthy,' but they must 'state the court's resolution of the disputed issues.'" *United States v. Job*, 871 F.3d 852, 869 (9th Cir. 2017) (quoting *United States v. Ingham*, 486 F.3d 1068, 1074 (9th Cir. 2007)).  Rule 32(i)(3)(B) applies only to factual disputes, not legal ones.  *United States v. Grajeda*, 581 F.3d 1186, 1188 (9th Cir. 2009).

As an initial matter, we agree with Wijegoonaratna that his objections were factual.  Wijegoonaratna objected to the presentence report's assumption that the patients who lived longer than six months or were alive at discharge were fraudulently certified.  He also argued that it was not reasonably foreseeable that CHC would continue to bill for patients after Wijegoonaratna's initial ninety-day certification.

Nonetheless, we conclude that the district court satisfied Rule 32's requirements.  The district court described Wijegoonaratna's objection on the record:

> There is a specific objection to the 18-level increase or enhancement for amount of loss. The claim that the government has failed to prove the loss by clear and convincing evidence.  And it appears that counsel is taking the position that the loss should be

> limited to the loss that was the subject of the counts of conviction at the time of trial which is significantly less than the loss calculated by the probation officer in the PSR.

The district court also said that it was "convinced that the government has met the clear and convincing standard regarding loss," explaining that "when a judge presides over a trial, there's so much more information that comes to light." The district court concluded that Dr. Wijegoonaratna's objections to loss "would be overruled." Those statements make clear that the district court was aware of Wijegoonaratna's objections but disagreed with them. The district court satisfied Rule 32's requirement. *See Job*, 871 F.3d at 869.

## C

Next, Wijegoonaratna raises two challenges to the loss amount calculations underlying the 18-level increase in his total offense level.

At sentencing, the government bears the burden of proving facts that support a sentencing enhancement. *See United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010). Where the sentencing enhancement "has an extremely disproportionate effect on the sentence relative to the offense of conviction," *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000)—and particularly where the enhancement is based on uncharged conduct—"due process may require clear and convincing evidence of that conduct." *United States v. Hymas*, 780 F.3d 1285, 1289 (9th Cir. 2015) (quoting *Treadwell*, 593 F.3d at 1000). We review "the district court's factual findings for clear error." *United States v. Bernardo*, 818 F.3d 983, 985 (9th Cir. 2016).

Calculating Wijegoonaratna's loss amounts, the government considered only bills associated with patients alive at discharge. Wijegoonaratna contends that the government should not have assumed that every patient alive at discharge had been fraudulently certified as hospice eligible. After all, about 15% of patients properly admitted to hospice care are alive at discharge. But at trial, the district court heard clear and convincing evidence to support the proposition that all of the patients that Wijegoonaratna certified were fraudulently certified. That some of those patients happened to die within six months—by coincidence or because they stopped receiving essential care for their non-terminal illnesses—does not undermine that evidence.

Wijegoonaratna also argues that he should not be held responsible for billing that occurred after the initial 90-day hospice certification. Wijegoonaratna contends that he did not participate in the recertifications. But even if that is true, the evidence at trial strongly suggested that he was well aware that CHC continued to bill for those patients. Indeed, Wijegoonaratna was deeply involved with CHC: he participated in at least some recertifications, served as attending physician for many patients, and attended team meetings as an associate medical director at CHC. Sufficient evidence supports the district court's finding that Wijegoonaratna intended the loss amounts underlying his sentencing enhancements.

## D

Based on the language of 18 U.S.C. § 3147, Wijegoonaratna also contends that the sentencing enhancement for committing a crime while on supervised release was improper. The statute applies an additional sentence where a person is "convicted of an offense committed while" on pretrial release. 18 U.S.C. § 3147; *see*

*also* U.S.S.G § 3C1.3 (2010) (increasing offense level by 3 levels where 18 U.S.C. § 3147 applies); U.S.S.G. § 3C1.3 (2016) (same).  Wijegoonaratna argues that the statute does not apply because all his counts of conviction—although not all his conduct related to his convictions—were committed before he went on pretrial release in October 2012.

Because Wijegoonaratna did not raise this issue at sentencing, the parties agree that we review for plain error. *See Depue*, 912 F.3d at 1232–34.  "An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003).

Wijegoonaratna has cited no controlling authority to support his contention that the time period of an "offense," for the purposes of 18 U.S.C. § 3147 and U.S.S.G. § 3C1.3, is limited to the dates of the charged executions of that scheme.  To the contrary, the Guidelines Manual defines "offense" for the purposes of the enhancement broadly to include "all relevant conduct."  U.S.S.G. § 1B1.1 cmt. n.1(H).  "[R]elevant conduct" means, among other things, acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A), (a)(2).

Though Wijegoonaratna's counts of convictions concerned conduct that occurred before October 2012, he continued to diagnosis patients for CHC after his pretrial release began.  That is, he continued the same "course of conduct" that led to his "offense of conviction."  *Id.*  The district court did not plainly err in applying 18 U.S.C. § 3147 and U.S.S.G. § 3C1.3.

**E**

Finally, Wijegoonaratna contends that the district court violated the ex post facto clause, U.S. Const. art. I, § 9, cl. 2, by sentencing him under the revised Guidelines Manual on the six counts (1, 2, 3, 4, 7, and 8) arising from conduct that occurred before the revision.

Because Wijegoonaratna did not raise the ex post facto challenge at sentencing, we would typically review his challenge for plain error. *Depue*, 912 F.3d at 1232–34. However, we have held that we are not limited to plain error review where the appeal presents a "pure question of law" and there is no prejudice to the opposing party. *See United States v. Torres*, 828 F.3d 1113, 1123 (9th Cir. 2016). *But see Yijun Zhou*, 838 F.3d at 1015–17 (Graber, J., concurring) (suggesting that the "pure question of law" exception to plain error review should be reconsidered en banc). That is the case here. The question presented is purely legal: Does applying the revised Guidelines Manual to all of Wijegoonaratna's counts violate the ex post facto clause? And we have previously held that "the government is not prejudiced by our requirement that the district court correctly calculate the Guidelines sentencing range before it imposes a sentence, even though [the defendant] did not raise the issue below." *United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010). We consider Wijegoonaratna's ex-post-facto-clause challenge de novo.**[3]**

---

**[3]** We consider Wijegoonaratna's challenge even though his sentence was below both the 2010 and 2016 Guidelines ranges because we must remand if the district court failed to calculate the proper range. *See Gall v. United States*, 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court . . . must first ensure that the district court committed no significant

At the outset, we reject the government's argument that the district court in fact sentenced Wijegoonaratna separately under the 2010 Guidelines Manual and the 2016 Guidelines Manual.  The parties did not mention the separate ranges in their sentencing memoranda or at sentencing.  The district court noted only one guidelines range, "108 to 135 months," which is the range provided by the 2016 Guidelines Manual.  Finally, the district court sentenced Wijegoonaratna to 78 months on counts 1, 2, 3, 4, 7, and 8, plus an additional 30 months on count 9, for a total of 108 months.  In doing so, the court commented that the sentence was at "the low end of the Guideline range."  That statement is accurate only if the district court was relying on the 2016 Guidelines Manual.

Because we conclude from this record that the district court sentenced Wijegoonaratna based on the 2016 Guidelines Manual, we next consider whether doing so violated the ex post facto clause.  Using a Guidelines Manual revised after an offense occurred to calculate a Guidelines range for that offense violates the ex post facto clause if the revision leads to a higher punishment.  *See United States v. Ortland*, 109 F.3d 539, 546 (9th Cir. 1997) ("[W]hen application of a version of the Guidelines enacted after the offense leads to a higher punishment than would application of the Guidelines in effect at the time of the offense, there is an ex post facto problem.").  For this reason, a defendant must generally be sentenced under the Guidelines Manual that was in effect when the offense occurred.  *See United States v. Warren*, 980 F.2d 1300, 1304 (9th Cir. 1992) ("Normally, a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing.").

procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.").

Where different counts involve different conduct occurring under different Guidelines Manuals, "different Guidelines ranges for those counts are appropriate." *United States v. Anekwu*, 695 F.3d 967, 989–90 (9th Cir. 2012). But where the conduct is a "continuing offense" spanning a period before and after a Guidelines Manual revision, the later Guidelines Manual applies without violating the ex post facto clause. *See United States v. Castro*, 972 F.2d 1107, 1112 (9th Cir. 1992) (holding that applying revised Guidelines to a continuing offense that terminated after the effective date of the revised Guidelines did not violate the ex post facto clause), *overruled on other grounds by United States v. Jimenez Recio*, 537 U.S. 270 (2003). The crux of the issue, then, is whether Wijegoonaratna was charged with a continuing offense. If so, application of the 2016 Guidelines Manual to all counts would not violate the ex post facto clause.

We have previously held that the government may decide to charge health care fraud schemes as a single count (one continuing offense) or as multiple counts (individual executions of a scheme). *See United States v. Holden*, 806 F.3d 1227, 1231–32 (9th Cir. 2015) (citing *United States v. Awad*, 551 F.3d 930, 937–38 (9th Cir. 2009)). That decision has its natural consequences. For example, it affects whether a defendant may be charged for conduct that falls outside the statute of limitations. *Id.* Specifically, where a health care fraud scheme is charged in a single count as a continuing offense, we have held that it may encompass acts that fall outside the statute of limitations. *Id.* But where the government charges each fraudulent act as a separate count, counts concerning conduct outside the statute of limitations must be dismissed. *See id.* at 1230, 1231–32.

Here, too, the government's decision to charge Wijegoonaratna with multiple counts has consequences. The government could have charged Wijegoonaratna's offense as a continuing offense, but it chose not to do so. For that reason, the ex post facto rule that applies to continuing offenses—just like the statute of limitations rule for continuing offenses—does not apply here, where the health care fraud was charged as multiple counts. Instead, the district court was required to calculate and apply the guideline ranges from the Guidelines Manual in effect at the time of each count. It did not. We vacate Wijegoonaratna's sentence and remand for further proceedings consistent with our decision.

### III

Wijegoonaratna's conviction is affirmed, and his sentence is affirmed in part and vacated and remanded in part for proceedings consistent with our opinion.

The parties are to bear their own costs.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.**