FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. LUIS FERNANDO CEJA, AKA Chako, *Defendant-Appellant.* | No. 20-50204<br><br>D.C. Nos.<br>2:18-cr-00742-RGK-DMG-1<br>2:18-cr-00742-RGK-DMG<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted December 8, 2021
Pasadena, California

Filed January 26, 2022

Before: Paul J. Kelly, Jr.,* Milan D. Smith, Jr., and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Kelly

---

* The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed a conviction and sentence for conspiracy to distribute methamphetamine, distribution of methamphetamine in the amount of at least 50 grams, distribution of methamphetamine in the amount of at least five grams, and distribution of methamphetamine within 1,000 feet of a school.

The defendant argued that his oral jury trial waiver was invalid, in this case in which both parties agreed that the district court did not inform the defendant of all four facts that make up a "substantial colloquy" under *United States v. Cochrane*, 770 F.2d 850 (9th Cir. 1985). In particular, the district court did not inform the defendant that he could take part in jury selection or that the jurors would be members of his community. Noting that this court's precedent permits oral jury trial waivers, the panel held that the district court's colloquy was adequate to ensure that the defendant knowingly, voluntarily, and intelligently waived his trial. The panel wrote that because the jury trial waiver was conducted orally through a court-interpreter, the defendant's language skills were not a barrier at his waiver proceeding, and there is no evidence that the defendant suffers from emotional or cognitive disabilities.

Reviewing the district court's denial of the defendant's motion for substitute counsel, the panel held that, given the subject matter of the colloquy (the defendant's

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

dissatisfaction with his counsel's suggested outcomes), the district court did not abuse its discretion in summarizing its ruling using the language of "inadequacy" rather than "conflict"; and that the district court's inquiry, though brief, was more than adequate to discern the defendant's complaints.

The defendant argued that the evidence was insufficient to convict him of distribution of at least 50 grams of methamphetamine. Without resolving whether a defendant's failure to challenge an indictment that could be duplicitous waives a later challenge based on insufficiency of the evidence, the panel wrote that even if it were to reach the merits of the defendant's sufficiency of the evidence claim, the claim would not succeed, because a rational trier of fact viewing the evidence in the light most favorable to the government could find that the defendant distributed 50 grams of methamphetamine in one distribution beyond a reasonable doubt.

Challenging the district court's application of the career offender guideline at sentencing, the defendant contended that his prior convictions under California Health and Safety Code § 11378 are not controlled substance offenses because the California methamphetamine provisions sweep more broadly than the federal provisions. The panel held that even assuming the district court erred under Fed. R. Crim. P. 32 by making no explicit factual finding on the defendant's objection to the Presentence Report regarding whether geometrical isomers exist, and assuming that error was plain, the error was harmless because under *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020), California's definition of methamphetamine is a categorical match to the definition under federal law based on the

scientific fact that geometrical isomers of methamphetamine do not exist.

## COUNSEL

Carlton F. Gunn (argued), Law Office of Carlton Gunn, Pasadena, California, for Defendant-Appellant.

Andrew M. Roach (argued) and Gregg Marmaro, Assistant United States Attorneys; Bram M. Adlen, Chief, Criminal Appeals Section; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

KELLY, Circuit Judge:

Defendant-Appellant Luis Fernando Ceja appeals his conviction and sentence for conspiracy to distribute methamphetamine, 21 U.S.C. § 846; distribution of methamphetamine in the amount of at least 50 grams, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); distribution of methamphetamine in the amount of at least five grams, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); and distribution of methamphetamine within 1,000 feet of a school, 21 U.S.C. § 860(a). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. Indictment and Drug Offenses

On October 25, 2018, Mr. Ceja was indicted for three sales of methamphetamine to an informant occurring on October 21, October 29, and November 5, 2014. The transactions were captured on audio and video. On October 21, Mr. Ceja indirectly sold two ounces to the informant through a co-conspirator. On October 29, the informant called the co-conspirator and requested one more ounce of methamphetamine but explained she would purchase two ounces if the co-conspirator could introduce her to Mr. Ceja. At the co-conspirator's house located near a middle school, the informant met Mr. Ceja and paid him for two ounces of methamphetamine. Mr. Ceja gave the informant one ounce and asked the informant to follow him in a car to obtain the second ounce. The parties took a short drive and parked near an apartment complex, where Mr. Ceja entered and re-emerged and gave the informant the second ounce. On November 5, Mr. Ceja distributed an additional ounce to the informant.

### B. Request for Substitute Counsel

A few months after his arrest, Mr. Ceja filed an ex parte application seeking a hearing "regarding status of counsel" without providing a reason for the request. The court held a hearing on August 6, 2019. Mr. Ceja was assisted by a Spanish interpreter throughout his court proceedings. Initially, Mr. Ceja only asked the court for assignment to a drug rehabilitation or house arrest program. The court asked whether Mr. Ceja had discussed the request with his attorney, and Mr. Ceja's attorney told the court that Mr. Ceja had rejected a plea agreement and "want[ed] another lawyer that can help him." The court noted that Mr. Ceja had not

yet specifically requested a new attorney and took a brief recess for Mr. Ceja to confer with his attorney. After the recess, the district court asked again what Mr. Ceja wanted the court to do. Mr. Ceja responded:

> DEFENDANT: That I want to change my attorney because as my attorney, he is not helping me.
>
> COURT: In what way?
>
> DEFENDANT: He wants me to accept ten years, and I don't think that's right. And as my attorney, he's not helping me to do the things that I'm telling him to do. That's why I would like to know if you can provide me with another attorney who will help me.

The court responded that it was not counsel's job to "tell you what you want to hear" and that "there's no indication that another attorney would tell you anything else." The court then asked:

> COURT: Is there anything specifically that he has done that you think is inadequate or improper?
>
> DEFENDANT: Well, he wanted me to sign for ten years, and that's a lot of time.
>
> COURT: But [you] don't have to sign for ten years. That's your choice. He probably told you he thinks it's best for you to sign for ten years?

> DEFENDANT: Yes. But I told him to help
> me with a rehab program for the drugs,
> whatever is needed because I have to take
> care of my children who are outside.
>
> COURT: Well, . . . I haven't heard anything
> to justify inadequacy of counsel. Is there
> anything else [Counsel] can add?
>
> COUNSEL: I really have nothing. There is
> no conflict that I see, Your Honor.

The district court then asked if there was "anything else anybody wants to say," and Mr. Ceja's attorney repeated that he had requested the hearing because Mr. Ceja wanted to talk to the court about getting a new lawyer. The district court concluded that "there's no showing of inadequacy of counsel or counsel and the client" and rejected Mr. Ceja's request.

## C. Oral Jury Trial Waiver

After filing, and withdrawing, a second request for a new attorney, Mr. Ceja waived his right to a jury trial on February 25, 2020, after the following colloquy:

> COURT: Okay. Mr. Ceja, is that your desire
> to have a court trial which means the judge
> would decide innocence or guilt, not a jury?
>
> DEFENDANT: Yes.
>
> COURT: Okay. You understand that you
> have a right to have a jury make that decision,
> and a jury trial 12 people would have to agree
> unanimously beyond a reasonable doubt to

find you guilty of the offense. Do you understand that?

DEFENDANT: Yes.

COURT: And until and unless they do, you have got a right to be presumed innocent. But if you have a Court trial, it's the judge that has to hear the evidence and make a decision whether or not the government has proved their case beyond a reasonable doubt, not the jury, so that would be the Court's decision. Is that agreeable with you?

DEFENDANT: Yes.

The district court remarked that Mr. Ceja's oral jury trial waiver "seem[ed] to be knowing, intelligent, free and voluntary."

## D.  Bench Trial and Verdict

Mr. Ceja's bench trial began on March 10, 2020. Before trial, the government, defense counsel, and Mr. Ceja all confirmed that both sides had waived a jury trial. After a one-day bench trial, the court found Mr. Ceja guilty on all four counts for which he was tried.

## E.  Sentencing and Application of the Career Offender Guideline

Mr. Ceja's sentencing guideline range was 360 months to life imprisonment based on the career offender guideline. *See* U.S.S.G. § 4B1.1. This differed from an earlier pre-plea, Presentence Report (PSR) that did not classify Mr. Ceja as a career offender. The pre-plea PSR concluded Mr. Ceja's

prior convictions under California Health and Safety Code § 11378 were not controlled substance offenses under the career offender guideline. However, between the pre-plea PSR and post-verdict PSR, we decided *United States v. Rodriguez-Gamboa*, 946 F.3d 548 (9th Cir. 2019). In light of that decision, the probation office updated its PSR, concluding that Mr. Ceja's prior convictions were controlled substance offenses, and the career offender guideline applied. Mr. Ceja objected. At sentencing, the district court did not address his objection but nevertheless varied downward because of Mr. Ceja's reliance on the pre-plea PSR, imposing a 240-month sentence.

## DISCUSSION

On appeal, Mr. Ceja argues that his convictions and sentence must be vacated because: (1) his oral jury trial waiver was invalid; (2) the district court abused its discretion in rejecting his request for substitute counsel; (3) the evidence is insufficient with respect to his conviction of distribution of at least 50 grams of methamphetamine; and (4) the court erroneously treated his prior convictions as controlled substance offenses under the career offender guideline.

## A. Oral Jury Trial Waiver

The adequacy of a jury trial waiver is reviewed de novo. *United States v. Shorty*, 741 F.3d 961, 965 (9th Cir. 2013). Federal Rule of Criminal Procedure 23(a) requires three conditions for a defendant to waive his right to a jury trial: "(1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Case law requires a fourth condition: the waiver must be knowing, voluntary, and intelligent. *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985). Despite Rule 23(a)'s

language requiring written waivers, an oral waiver may be sufficient in certain cases. *Shorty*, 741 F.3d at 966. A written waiver carries the presumption that it was made knowingly, voluntarily, and intelligently. *Id.* Where there is no written waiver—as in this case—there is no such presumption. *See id.*

In *Cochran*, this court "implored"—but did not mandate—district courts to ensure jury trial waivers are knowing, voluntary, and intelligent by engaging in a "substantial colloquy" that informs the defendant of four facts: "(1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." 770 F.2d at 852–53. However, the described substantial colloquy is required where a defendant's mental or emotional state is a salient fact putting the court on notice that a defendant's waiver may not be knowing and intelligent. *United States v. Christensen*, 18 F.3d 822, 825–26 (9th Cir. 1994). Both parties agree that the district court did not inform Mr. Ceja of all four facts that make up a substantial colloquy. In particular, the district court did not inform Mr. Ceja that he could take part in jury selection or that the jurors would be members of his community. However, nothing suggested that Mr. Ceja's waiver might not be knowing and intelligent, and thus the failure of the district court to explicitly explain the jury selection process is not determinative.

Mr. Ceja argues that his language barrier and eighth-grade education obtained in a foreign country constituted salient facts that put the district court on notice that his waiver was not knowing and intelligent. Mr. Ceja relies heavily on *United States v. Duarte-Higareda*, 113 F.3d 1000

(9th Cir. 1997), in arguing that his language barrier required a substantial colloquy, but the facts of that case are readily distinguishable. Mr. Duarte-Higareda also used a Spanish interpreter throughout his district court proceedings, but unlike Mr. Ceja, Mr. Duarte-Higareda waived his right to a jury trial in writing using a form that was printed entirely in English, and there was no evidence that the written waiver was ever translated. *Id.* at 1002. Because Mr. Ceja's jury trial waiver was conducted orally through a court-certified interpreter, his language skills were not a barrier at his waiver proceeding.

Mr. Ceja also relies heavily on *Christensen* and *Shorty* to argue that his limited education in a foreign country constitutes a salient fact, but, again, these cases are inapposite. In *Christensen*, the defendant's manic-depressive disorder required further inquiry into the voluntariness of his waiver. 18 F.3d at 825. In *Shorty*, the defendant had a "low I.Q." and was "learning disabled." 741 F.3d at 967. Here, there is no evidence that Mr. Ceja suffers from emotional or cognitive disabilities. Thus, where this court's precedent permits oral jury trial waivers, the district court's colloquy was adequate to ensure that Mr. Ceja knowingly, voluntarily, and intelligently waived his right to a jury trial.

## B. Motion for Substitute Counsel

This court reviews the denial of a motion for substitute counsel for an abuse of discretion and considers: "(1) the timeliness of the motion; (2) the adequacy of the district court's inquiry; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." *United*

*States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009).  Mr. Ceja challenges the second factor.[1]

First, Mr. Ceja argues that the district court erroneously focused on counsel's competency, rather than the conflict between Mr. Ceja and his counsel.  "[T]he proper focus . . . is on the nature and extent of the *conflict* between defendant and counsel, not on whether counsel is legally *competent*." *United States v. Walker*, 915 F.2d 480, 483 (9th Cir. 1990), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).  Although the district court did not directly discuss the purported conflict between Mr. Ceja and his counsel, it did acknowledge that Mr. Ceja's counsel did not see a conflict and received no substantive response after asking if there was anything else anybody wanted to add.  Given the subject matter of the colloquy (Mr. Ceja's dissatisfaction with his counsel's suggested outcomes) and its context, the district court did not abuse its discretion in summarizing its ruling on the motion using the language of "inadequacy" rather than "conflict."

Second, Mr. Ceja argues that the district court's inquiry was not sufficiently in-depth.  A court's inquiry must provide an adequate foundation for making an informed ruling.  *United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010).  Open-ended questions aimed at understanding the core of the issues between a defendant and

---

[1] The government argues that Mr. Ceja waived this argument on appeal due to his February 2020 request for new counsel and subsequent withdrawal of that request.  Because courts should make every reasonable presumption against a finding of waiver of constitutional rights, *Gete v. INS*, 121 F.3d 1285, 1293 (9th Cir. 1997), we do not deem this claim regarding Mr. Ceja's August 2019 request for new counsel to be waived based on Mr. Ceja's withdrawal of a subsequent request for new counsel.

counsel are adequate. *See Mendez-Sanchez*, 563 F.3d at 942–43. Although brief, the district court's inquiry was more than adequate to discern Mr. Ceja's underlying complaints. The district court was able to discern twice— both before and after the court's recess—that the source of the purported conflict was Mr. Ceja's dissatisfaction with the ten-year plea deal and counsel's inability to get him into a rehab program. The open-ended questions and Mr. Ceja's responses allowed the district court to evaluate whether there was a severe conflict amounting to a breakdown of communication in the attorney-client relationship. *See United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003). The district court did not abuse its discretion in considering this motion.

## C. Sufficiency of Evidence

Mr. Ceja argues that the evidence was insufficient to convict him of distribution of at least 50 grams of methamphetamine. The government argues that Mr. Ceja waived this claim for appellate review because his sufficiency of the evidence claim is merely a duplicity challenge to his indictment in disguise. Federal Rule of Criminal Procedure 12(b)(3)(B)(i) is clear that any defense involving a defect in the indictment, including "joining two or more offenses in the same count (duplicity)," must be raised in a pretrial motion or it is waived. *See United States v. McCormick*, 72 F.3d 1404, 1409 (9th Cir. 1995). Mr. Ceja contends that he properly brings a sufficiency of evidence claim as he is asserting a violation of his "constitutional right not to be convicted of a criminal offense for which there is insufficient evidence."

We have not resolved whether a defendant's failure to challenge an indictment that could be duplicitous waives a later challenge based on insufficiency of the evidence. And

we need not do so here because even if we were to reach the merits of Mr. Ceja's sufficiency of the evidence claim, it would not succeed.  A rational trier of fact viewing the evidence (including the audio and video recordings) in the light most favorable to the government could find that Mr. Ceja distributed 50 grams of methamphetamine in one distribution beyond a reasonable doubt.  *See United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018).  While Mr. Ceja gave the informant two one-ounce baggies of methamphetamine at different locations, the deliveries occurred a short distance apart, within a short period of time, between the same individuals, and shortly after Mr. Ceja was given a single payment for both ounces.  Consequently, the deliveries are sufficiently related to be rationally considered one distribution.  *See United States v. Mancuso*, 718 F.3d 780, 793–94 (9th Cir. 2013); *cf. United States v. Palafox*, 764 F.2d 558, 562–63 (9th Cir. 1985) (en banc) (finding drug offenses "committed at virtually the same time, in the same place, and with the same participants" should not be compounded for punishment purposes, in contrast to distributions involving "two different individuals as part of two separate transactions").

## D.  Application of the Career Offender Guideline

Whether a conviction qualifies as a controlled substance offense is a question of law reviewed by this court de novo. *United States v. Leal-Vega*, 680 F.3d 1160, 1163 (9th Cir. 2012).

The district court found that Mr. Ceja qualified as a career offender because his two prior convictions under California Health and Safety Code § 11378 are controlled substance offenses.  Mr. Ceja contends that his prior state convictions are not controlled substance offenses because the California methamphetamine provisions sweep more

broadly than the federal provisions, and the career offender guideline should not have been applied. However, both Mr. Ceja and the government agree that *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020), controls as a matter of law, and that this case squarely rejects Mr. Ceja's argument regarding his prior state convictions. The district court correctly applied the career offender guideline under *Rodriguez-Gamboa*.

Mr. Ceja also objected to his PSR on the basis that "whether geometric isomers of methamphetamine exist is a factual issue that remains to be resolved in the district court." Federal Rule of Criminal Procedure 32(i)(3)(B) states a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Any findings of the district court under Rule 32(i)(3)(B) must be "express and explicit." *United States v. Wijegoonaratna*, 922 F.3d 983, 990 (9th Cir. 2019). Where, as here, a defendant does not object to the district court's compliance with Rule 32 at sentencing, this court reviews for plain error. *Id.* at 989. "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc) (quoting *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009)).

The district court made no explicit factual finding on whether geometrical isomers exist. But even assuming the district court erred, and that error was plain, the error was harmless because there is no possibility that the court's resolution of Mr. Ceja's factual objection would have affected his sentence. Under the plain error standard, a

sentencing error prejudices a defendant's substantial rights "when there is a reasonable probability that he would have received a different sentence had the district court not erred." *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013). This court in *Rodriguez-Gamboa* held, as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under federal law based on the scientific fact that geometrical isomers of methamphetamine do not exist. *See* 972 F.3d at 1154 n.5. The district court expressly stating that fact would not change Mr. Ceja's sentence.

**AFFIRMED.**