NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 27 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRISTAN JAMAL GRANT,

Defendant - Appellant.

No. 22-30071

D.C. No.
3:19-cr-03-RRB-MMS-1

MEMORANDUM*

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted May 20, 2024
Anchorage, Alaska
Submission Withdrawn July 23, 2024
Resubmitted April 23, 2026

Before: BYBEE, FRIEDLAND, and MILLER, Circuit Judges.

Tristan Grant appeals his convictions for sex trafficking and sexual

exploitation of minors, 18 U.S.C. §§ 1591(a)(1), (2); 2251(a), (e); 1594(c), and for

being a felon in possession of firearms, 18 U.S.C. § 922(g)(1). We have jurisdiction

pursuant to 28 U.S.C. § 1291 and affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1. Grant first challenges his convictions on due process grounds, arguing that he was denied the right to trial by an impartial tribunal because the district court prejudged his guilt. As evidence, he points to the judge's statements that he had begun work on his findings before the trial's conclusion and to the minimal time it took for the judge to produce those findings after trial ended. Because he did not raise this objection before the district court, we review for plain error. Fed. R. Crim. P. 52(b).

We conclude that there was no due process violation. Due process "entitles a person to an impartial and disinterested tribunal." *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1403 (9th Cir. 1994) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). "As long as a judge is capable of refining his views" such that his mind is not "'irrevocably closed' on the issues as they arise in the context of the specific case," the judge is impartial enough to satisfy the demands of due process. *United States v. Payne*, 944 F.2d 1458, 1476–77 (9th Cir. 1991) (quoting *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 991 (D.C. Cir. 1984)).

Grant has not shown that the judge's mind was irrevocably closed to his arguments. Even if the judge began to draw conclusions during the trial—as drafting findings of fact before the end of trial would suggest—nothing in the record indicates that he would not have revised those conclusions had Grant presented credible evidence to call the government's case into question. A judge may form preliminary

2

yet revisable judgments prior to trial's completion. *See Liteky v. United States*, 510 U.S. 540, 551 (1994) (stating that a judge's "knowledge and the opinion it produced" do not improperly bias a judge when they are "properly and necessarily acquired in the course of the proceedings"). And nothing about the judge's efficiency undermined the integrity of the court so as to violate due process by the appearance of partiality. *Cf. Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) ("[T]he adjudicator's *pecuniary or personal interest* in the outcome of the proceedings may create an *appearance of partiality* that violates due process . . . ." (first emphasis added) (citation omitted)).

2. Next, Grant argues that the district court denied him the right to a jury trial by accepting an unknowing, involuntary, or unintelligent waiver of that right. *See United States v. Ceja*, 23 F.4th 1218, 1224 (9th Cir. 2022). Because Grant submitted a written waiver to the court, we presume that his waiver was knowing, voluntary, and intelligent. *United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013). Grant has not overcome that presumption. He repeatedly affirmed not only his understanding of the nature of the right he was waiving but also his willingness to do so in light of his circumstances. Those circumstances included the massive disruptions of the COVID-19 pandemic, which necessitated the general continuance of criminal jury trials. When the district court advised Grant that jury trials had been

3

postponed and would likely continue to be postponed for the indefinite duration of the public health crisis, Grant chose to proceed to a bench trial.

Grant emphasizes that when he made this choice, he was ignorant of a limited exception allowing some jury trials to proceed under the district court's general orders. Without the opportunity to consider and request such an exception, Grant argues that his waiver could not be knowing, voluntary, and intelligent. But on the record before us, there is every indication that Grant would still have opted for a bench trial if it meant a swifter resolution of his case. In November 2020, Grant stated his preference for a jury trial but also expressed willingness to accept a bench trial out of a desire to "get this over with." The district court explained the advantage of a jury trial, and Grant expressed that he would prefer an earlier bench trial to a later jury trial. As time wore on, Grant became increasingly impatient. When he last inquired about the availability of jury trial, he told the district court that "regardless . . . I want to do a bench trial."

We conclude that Grant's ignorance of the exception did not affect the voluntariness of his waiver. He willingly chose the speedier bench trial and is now bound by its results.

3. Grant's contention that the district court violated his right to a speedy trial also fails. He challenges the court's decision to exclude the time between February 26 and July 22 of 2019 from the 70-day clock created by the Speedy Trial Act, 18

4

U.S.C. § 3161. But that exclusion was permissible under 18 U.S.C. § 3161(h)(7)(A), whereby a judge may grant "such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The statute provides a non-exhaustive list of factors the court "shall consider" in granting an ends-of-justice exclusion, including whether the case's complexity would preclude "adequate preparation . . . within the time limits established." *Id.* § 3161(h)(7)(B). The district court cited the complexity of Grant's case and defense counsel's need for additional preparation time as reasons for excluding the relevant time period. Reviewing the court's ends-of-justice determination for clear error, we find no fault. *See United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022).

4. Grant's felon-in-possession convictions are not unconstitutional because 18 U.S.C. § 922(g)(1) does not violate the Second Amendment as applied to him. Although Grant did not specify the basis for his as-applied challenge in the briefing below, his criminal record contains five convictions for assault, attempted robbery, and the possession and sale of drugs. In *United States v. Duarte*, an en banc panel of this court held that § 922(g)(1)'s "permanent and categorical disarmament of felons is consistent with this Nation's historical tradition of firearm regulations." 137 F.4th 743, 761 (9th Cir. 2025) (en banc), *cert. denied*, No. 25-425, 2026 WL 135692 (U.S. Jan. 20, 2026). We consequently held that "§ 922(g)(1) is constitutional as

5

applied to . . . non-violent felons.  *Id.* at 762.  *Duarte* thus forecloses any plausible argument available to Grant.

**AFFIRMED.**